UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| HOWARD R. PYATT,          ) | |
| ) | |
| Plaintiff(s),      ) | |
| ) | |
| vs.              ) | Case No. 4:20-CV-805 SRW |
| ) | |
| ANDREW M. SAUL,          ) | |
| Commissioner of Social Security  ) | |
| Administration,          ) | |
| ) | |
| Defendant(s).     ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on review of an adverse ruling by the Social Security Administration. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties have consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Plaintiff filed a Brief in Support of the Complaint. ECF No. 17. Defendant filed a Brief in Support of the Answer. ECF No. 18. The Court has reviewed the parties' briefs and the entire administrative record, including the transcripts and medical evidence. Based on the following, the Court will affirm the Commissioner's decision.

**I.    Factual and Procedural Background**

On April 30, 2017, Plaintiff Howard R. Pyatt protectively filed an application for disability insurance benefits ("DIB") under Title II, 42 U.S.C. §§ 401, *et seq*. Tr. 154-163. Plaintiff's application was denied on initial consideration, and he requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 73-79.

Plaintiff, with the assistance of an attorney, appeared for an initial hearing on April 8, 2019. Tr. 26-62. Plaintiff testified concerning his disability, daily activities, functional

1

limitations, and past work. *Id*. The ALJ also received testimony from vocational expert ("VE") Darrell W. Taylor, Ph.D. *Id*. On June 13, 2019, the ALJ issued an unfavorable decision finding Plaintiff not disabled. Tr. 9-20. Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. Tr. 151-53. On May 18, 2020, the Appeals Council denied Plaintiff's request for review. Tr. 1-5. Accordingly, the ALJ's decision stands as the Commissioner's final decision.

With regard to Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective statements of facts and responses. The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

## II.     Legal Standard

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a severe impairment "which significantly limits claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for

3

...

*providing* evidence relating to his RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations

are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

**III.    The ALJ's Decision**

Applying the foregoing five-step analysis, the ALJ found Plaintiff last met the insured status requirements of the Social Security Act on March 31, 2018, and Plaintiff has not engaged in substantial gainful activity from his alleged onset date of December 24, 2012 through the date last insured. Tr. 13. Plaintiff has the severe impairments of diabetes mellitus and obesity which are severe in combination. Tr. 13-15. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. Tr. 15-16. The ALJ found Plaintiff has the RFC "to perform the full range of medium work as defined in 20 CFR 404.1567(c)." Tr. 16.

At Step Four, the ALJ found Plaintiff is able to perform his past relevant work as an electrician. Tr. 18-19. The ALJ further found Plaintiff has at least a high school education and is able to communicate in English. Tr. 19. The ALJ determined the transferability of job skills was not material to the determination of disability because the Medical-Vocational Rules directly supports a finding of "not disabled" whether or not Plaintiff has transferrable job skills. *Id*. At Step Five, considering Plaintiff's age, education, work experience and RFC, the ALJ found there were jobs existing in significant numbers in the national economy the Plaintiff could perform. *Id.* The ALJ concluded Plaintiff was not under a disability from December 24, 2012 through March 31, 2018, the date last insured. *Id.*

**IV.     Discussion**

Plaintiff challenges the ALJ's decision on one ground, arguing the ALJ erred by failing to fully and fairly develop the record which resulted in an improper determination that Plaintiff could perform a full range of medium work. ECF No. 17, at 3-7. Specifically, Plaintiff argues the record was not fully developed because the ALJ failed to order an updated X-ray of his right knee. Plaintiff asserts he was unable to afford additional testing without financial assistance, and an updated X-ray would have shown the current severity of Plaintiff's impairment.

In response, the Commissioner argues the record was sufficiently developed, and the ALJ was not required to order an X-ray. ECF No. 18, at 9. The Commissioner points to the ALJ's consideration of Plaintiff's lack of complaints regarding knee pain in May and June 2012; his toleration of weightbearing in July 2012; clearance to return to work "without limitation" in September 2012; and a lack of surgical intervention or hospitalization after Plaintiff was permitted to resume work. ECF No. 18, at 4-6, Tr. 14-17, 269-79, 291-97.

The Commissioner also cites to specific treatment notes. For example, Plaintiff complained of localized joint pain in his right knee in August 2013, but no specific knee issues were noted upon physical examination. ECF No. 18, at 6; Tr. 336-38. In December 2013 and August 2014, examinations revealed no masses, effusions, misalignment, crepitus, or tenderness in his major joints. ECF No. 18, at 6; Tr. 330-35. In April 2017, Plaintiff did not complain of knee pain, and no new issues were noted upon physical examination.[1] ECF No. 18, at 6; Tr. 327-29. In July 2017, the Agency sent Plaintiff for a consultative examination, which revealed no significant limitations attributable to his alleged right knee impairment. ECF No. 18, at 7; Tr. 16-17, 361-64. The Commissioner also found it significant that Plaintiff did not explicitly request

---

[1] Medical records are sparse between December 2014 through February 2017 because Plaintiff was incarcerated. *See Pl.'s Hearing Testimony* at Tr. 42.

6

the ALJ to order an X-ray at the hearing, and no treatment provider indicated an updated X-ray was necessary to evaluate or treat Plaintiff's condition. ECF No. 18, at 8.

An ALJ has a duty to fully develop the record, but this duty only arises if a crucial issue is undeveloped. *Ellis v. Barnhart,* 392 F.3d 988, 994 (8th Cir. 2005). This duty is not "never-ending," and an ALJ is not required to disprove every possible impairment. *Barret v. Shalala*, 39 F.3d 1019, 1023 (8th Cir. 1994). The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled. *Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986); *see also Niemeyer v. Berryhill*, No. 2:15-CV-00089-JAR, 2017 WL 1155904, at *5 (E.D. Mo. Mar. 28, 2017) (finding the ALJ need only order a consultative knee X-ray "should the ALJ find that the record is not adequately developed to allow such a determination in the absence of such testing"). Social Security regulations do not require the ALJ to order a consultative evaluation of every alleged impairment but does grant the ALJ authority to do so if the existing medical sources do not contain sufficient evidence to make a determination. *See Matthews v. Bowen*, 879 F.2d 422, 424 (8th Cir. 1989).

After a careful review of the record as a whole and the parties' respective arguments, the Court finds the ALJ did not err in failing to order an X-ray of Plaintiff's right knee because the underlying medical record contained sufficient medical evidence to support the RFC. In making the RFC determination, the ALJ referenced treatment notes from Plaintiff's physicians, work history, and activities of daily living. Although the ALJ found that Plaintiff's right tibial fracture did not last the requisite twelve months to qualify as a severe impairment, she considered Plaintiff's complaints of knee pain in formulating Plaintiff's RFC. Tr. 13-18. *See also Turpin v.*

7

*Colvin*, 750 F.3d 989, 994 (8th Cir. 2014) (Social Security Act requires the disability lasted or was expected to last for at least twelve months).

The ALJ acknowledged Plaintiff was involved in a motorcycle accident on March 14, 2012 and suffered a bicondylar tibial plateau fracture. Tr. 14, 256, 258-59. On March 27, 2012, Dr. Christopher McAndrew performed an open reduction and internal fixation of the fracture. Tr. 14, 261-66. X-ray imaging from July 12, 2012 revealed "healing, reduced, internally fixed right lateral tibial plateau fracture with unchanged lateral tibial articular incongruence," "healed right proximal tibial fracture," and indicated "one of the lateral proximal screws [had] backed out slightly." Tr. 283-84. X-ray imaging from September 21, 2012 revealed "[h]ealing internally-fixated proximal right tibial fracture with mild articular incongruence along the lateral plateau," "healing right proximal fibular fracture," and indicated the position of the screw was unchanged from the radiograph taken on July 12, 2012. Tr. 283, 305. On September 21, 2012, Dr. McAndrew cleared Plaintiff to return to work after Plaintiff reported only "occasional" pain and determining Plaintiff's fracture was healed. Tr. 291.

Plaintiff argues Dr. McAndrew should not have authorized him to return to work because he did not know Plaintiff was an electrician, which required occasional climbing, balancing, kneeling, crouching, and crawling. ECF No. 17, at 5. While the medical record does not definitively indicate whether Dr. McAndrew knew Plaintiff was an electrician, no other treating physician or consultative examiner expressed an opinion that Plaintiff was limited in his ability to work or that he had specific physical limitations. *See Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (lack of significant restrictions imposed by doctors is inconsistent with claims of disabling pain).

The ALJ further considered treatment records evidencing Plaintiff's participation in physical therapy and a home exercise plan. Tr. 14, 269-79, 291-97. On July 13, 2012, Plaintiff reported to Dr. McAndrew that he had "no complaints," felt he was "doing very well with recovery," was "getting his range of motion back," and had "been tolerating weightbearing very well." Tr. 292. Dr. McAndrew directed him to continue physical therapy. The ALJ considered the fact that Plaintiff alleged a disability onset date of December 24, 2012 but did not complain of localized joint pain until August of 2013, which he described to Dr. Patterson as "moderate in severity" and aggravated by "overwork." Tr. 198-99, 336-38.

Physical examinations of Plaintiff's major joints found no masses, effusions, misalignment, crepitus, or tenderness. Tr. 327-29, 330, 332-33, 335, 382, 384. Notably, Plaintiff did not consistently complain of knee pain during his visits with Dr. Patterson from April 2017 to March 2018, and he reported some pain relief with medication. Tr. 327-29, 375, 378, 382-84. *See Hensley*, 829 F.3d at 933 (if an impairment can be controlled by treatment or medication, it cannot be considered disabling); *Wildman v. Astrue*, 596 F.3d 959, 965 n.3 (8th Cir. 2010) (ALJ may properly consider that pain is "fairly," though not completely, under control when the plaintiff is compliant with medication); *Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017) (ALJ properly concluded the objective medical evidence did not support the claimant's allegations). Substantial evidence in the record as a whole supports the ALJ's determination that Plaintiff did not establish consistent complaints of his symptoms to meet the clinical threshold for disabling symptoms or physical limitations.

Also significant is the fact that the Agency sent Plaintiff for a consultative evaluation, performed by Dr. Barry Burchett, M.D., in effort to further develop the record. Tr. 16-17, 361-66. The July 12, 2017 physical examination revealed Plaintiff's right knee to be normal, except

9

for a somewhat wide scar in the right proximal tibia. Tr. 364. Plaintiff reported he could ascend one and a half flights of stairs and go grocery shopping. Tr. 361. Plaintiff exhibited "a normal gait, which is not unsteady, lurching or unpredictable;" did not require the use of a handheld assistive device; had the ability to tandem walk and squat without difficulty; had the ability to walk on his heels and toes; and possessed intact cranial nerves, preserved sensation, and symmetrical reflexes. Tr. 17, 362-64. The examination revealed full 5/5 right leg strength. Tr. 365. Dr. Burchett also performed functional and range of motion testing, which showed mobility and functionality consistent with the capability to perform medium level exertional work during the period at issue. Tr. 17, 364-66. Clinical range of motion testing found him to have full range of motion in both his upper and lower extremities and normal range of motion of his cervical and lumbar spine. *Id.* In his report, Dr. Burchett did not indicate any additional testing or imaging would be necessary.

The ALJ also considered Plaintiff's activities of daily living. Tr. 18. The ALJ noted that although some evidence in the record demonstrated an underlying severe impairment, it also established Plaintiff retained the capacity to function adequately and to perform many basic activities associated with maintaining employment. *Id*. For example, Plaintiff was able to cook, clean, wash dishes, do laundry, shop, drive a car, and walk up to a half a mile at the time during the period at issue. Tr. 18, 208-215. *See Thomas v. Berryhill*, 881 F.3d 672, 676 (8th Cir. 2018) (daily activities including preparing meals, doing housework, shopping, watching television, and driving, conflicted with allegations of disability). The ALJ also took notice that the record contained no surgical intervention, hospitalization, or significant objective findings demonstrating that Plaintiff's arthritis or joint pain with swelling caused limitations precluding him from performing medium exertional work. Tr. 17-18.

An ALJ does not err if he or she discredits a plaintiff's subjective complaints based on inconsistencies in the record. *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (ALJ may decline to credit subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony). As discussed above, Dr. Patterson's examinations showed no masses, effusions, misalignments, crepitus, or tenderness of the right knee joint. Tr. 327, 329, 332, 335, 351-52, 375, 378, 384. The findings of the consultative examination of the right knee were normal, including full range of motion and strength, no tenderness or swelling, normal gait and squat, and intact sensation and reflexes. Tr. 361-66. Additionally, Plaintiff reported relief of his symptoms with medication. Tr. 382. Thus, the record was fully developed to allow the ALJ to form an RFC determination without additional imaging. *See Matthews*, 879 F.2d at 425 (medical reports showing only minimal back problem allowed ALJ to discount claimant's subjective complaints of disabling back pain); *Smith*, 987 F.2d at 1374 (lack of significant restrictions imposed by doctors is inconsistent with claims of disabling pain).

Moreover, at the start of the hearing, the ALJ directly asked Plaintiff's attorney whether any additional medical records should be added. Tr. 28-30. Plaintiff's attorney did not assert a need for an updated X-ray. *Id. See Otter v. Colvin*, No. CIV. 14-5038, 2015 WL 2380086, at *2-3 (W.D. Ark. May 19, 2015) (ALJ was not required to order an X-ray, noting the plaintiff did not suggest one was needed during his hearing and no provider suggested further imaging was needed). Later in the hearing, Plaintiff was asked whether he had ever gotten an X-ray of his *left* knee and he responded: "No. Actually, my problem has been being able to afford that kind of thing." Tr. 34-35. Plaintiff did not testify, however, that any doctor had recommended a left knee X-ray or an updated right knee X-ray. *Id.* Neither Plaintiff nor his attorney requested the ALJ to order any additional imaging. *See White v. Colvin*, 129 F. Supp 3d 813, 829 (E.D. Mo. 2015)

11

(ALJ did not err in failing to order additional testing when record does not reflect Plaintiff's counsel requested the ALJ to order testing of Plaintiff).

Plaintiff emphasizes his inability to afford treatment in his argument; however, in the Court's careful review of the medical record, there is no indication that finances served as a barrier to Plaintiff's treatment or ability to obtain radiological examinations. None of the treatment notes reflect that his physicians were concerned about Plaintiff being able to afford medication, physical therapy, or additional testing. None of his physicians documented that they avoided certain treatment or testing because of Plaintiff's financial barriers. At the hearing, Plaintiff testified Dr. Patterson gave him some sample inhalers because of his financial issues. Tr. 40. However, the medical notes indicate Plaintiff would try the sample inhalers for his shortness of breath, but if the inhalers did not help, then the doctor would consider a stress test. Tr. 376, 384. The records lack any mention of Plaintiff's financial issues. *See Dover v. Bowen*, 784 F.2d 335, 337 (8th Cir. 1986) (ALJ must consider a claimant's allegation that he has not sought medical treatment because of lack of finances where record included physician reports noting claimant's financial situation).

After careful review of the medical record as a whole, especially Dr. Patterson's normal findings upon numerous examinations of Plaintiff's knees and the normal findings of the consultative examination, the Court cannot find an additional X-ray would have changed Plaintiff's RFC. *See Swink v. Saul*, 931 F.3d 765, 770 (8th Cir. 2019) (An ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision). Plaintiff's argument that ordering another X-ray "would have in all likelihood" have changed the ALJ's determination is not enough to carry his burden of establishing disability or changing his RFC. Tr. 17, at 3, 7. *See* 20

C.F.R § 404.1512; *see also Bowen v. Yukert*, 482 U.S. 137, 146 (1987) (it is the claimant's burden to produce evidence to support the claim). "[T]he burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (quoting *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005)).

The Court finds Plaintiff's arguments to be without merit as the record was fairly and fully developed. Substantial evidence on the record as a whole supports the ALJ's decision. The ALJ's decision is consistent with Social Security Administration regulations and case law. "If substantial evidence supports the decision, then we may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if we may have reached a different outcome." *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). The ALJ considered Plaintiff's subjective allegations of pain and the totality of the medical record when determining Plaintiff's residual functional capacity. The ALJ properly found, considering all of the evidence, Plaintiff was able to meet the physical and mental demands of his past work as an electrician. The Court must affirm the ALJ's decision.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff Howard R. Pyatt's Complaint is **DISMISSED, with prejudice**. A separate judgment will accompany this Memorandum and Order.

So Ordered this 17th day of March 2021.

*/s/ Stephen R. Welby*
**STEPHEN R. WELBY**
**UNITED STATES MAGISTRATE JUDGE**